In re Michael Raymond McMONAGLE
and Suzanne B. McMonagle, Debtors.

Bankruptcy No. 481–00022.

United States Bankruptcy Court,
D. South Dakota.

June 3, 1983.

David Alan Palmer, Sioux Falls, S.D., for creditors Marlyn Hanten and Geraldine Hanten.

Robert L. Jones, Sioux Falls, S.D., for creditors G & H Masonry and Omaha Nat. Bank.

J. Bruce Blake, Sioux Falls, S.D., for debtors Michael Raymond McMonagle and Suzanne B. McMonagle.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

This matter came on for hearing on the objection to confirmation of the Debtors' Chapter 13 plan filed by unsecured creditors Marlyn E. Hanten and Geraldine Hanten ("Hanten"). Thereafter, unsecured creditors G & H Masonry ("G & H") and the Omaha National Bank (the "Bank") joined in Hanten's objections. After several continuances, the objections came on for hearing before the undersigned Bankruptcy Judge. The Court having heard the evidence and the arguments of counsel, having reviewed the memorandums of law submitted by the parties, and being fully informed and advised, finds as follows.

On February 13, 1981, Michael Raymond McMonagle and Suzanne B. McMonagle (the "Debtors") filed a Chapter 7 petition. The trustee reported that there were no assets to be distributed in the individual Debtors' case. McMonagle Construction Company, Inc. (the "debtor Company"), filed for relief under Chapter 7 on February 13, 1981. Debtor Michael Raymond McMonagle was the president of the debtor Company. All assets have been administered, the trustee discharged, and the debtor Company's bankruptcy case closed by the Court's order of January 6, 1983.

The Bank obtained a judgment of nondischargeability against debtor Michael Raymond McMonagle on June 22, 1981. G & H filed a complaint to determine nondis-

chargeability on April 3, 1981. Hanten filed a complaint to determine nondischargeability on May 6, 1981. Both cases have been continued pending confirmation of the Debtors' Chapter 13 plan.

On July 17, 1981, Michael Raymond McMonagle and Suzanne B. McMonagle converted their Chapter 7 case to a Chapter 13 case. The Debtors owed no secured debt. The Debtors owed $59,138.00 in noncontingent, liquidated, unsecured debts on July 17, 1981. The Debtors' plan proposed to pay $10,500.00 over a sixty-month period. One priority unsecured creditor would be paid approximately $550.00 and the balance of the payments would be paid on a pro rata basis to the unsecured creditors filing claims. After six months from the date of the creditors' meeting, unsecured proofs of claim had been filed in an amount of $6,843.00.

On July 21, 1981, the Office of the Clerk of the Bankruptcy Court mailed notice of the Debtors' conversion to a Chapter 13 case. Such notice included the notification that the meeting of creditors was scheduled for August 5, 1981, with a confirmation hearing to be held immediately thereafter and that all creditors had six months within which to file a proof of claim in order to share in any distribution. Hanten, G & H, and the Bank and their respective counsel were included on the mailing matrix from which notice was given by the Clerk's office.

At the hearing on confirmation of the Debtors' Chapter 13 plan held August 5, 1981, counsel for Hanten submitted written objections to confirmation. G & H and the Bank orally joined in the objections of Hanten. Hanten requested a hearing on the objections and the confirmation hearing was continued pending a hearing on the objections.

On January 15, 1982, G & H and the Bank each filed written objections to confirmation of the Debtors' Chapter 13 plan.

On February 18, 1982, a hearing on the objections of Hanten, G & H, and the Bank was held before the Court. There were three objections raised by Hanten. The first objection challenges the eligibility of the Debtors to file for relief under Chapter 13. Hanten submits that the Debtors owe noncontingent, liquidated, unsecured debts in excess of $100,000.00. The second objection alleges that the Debtors' plan was not filed in good faith because the debtors converted to Chapter 13 to avoid paying a fraud judgment entered by a state court against the Debtors. The third objection also relies on the state court judgment. Hanten argues that the debt would be nondischargeable under Chapter 7 but would be discharged in a Chapter 13 and Hanten would, therefore, receive less on their claim under the Debtors' Chapter 13 plan than in a Chapter 7 liquidation.

G & H joins in the objections of Hanten for the reasons set out by Hanten. The Bank also joins in the objections of Hanten for the reasons set out by Hanten.

▮▮▮ Hanten raises two additional objections in its memorandum of law that were not raised in the written objections nor raised at the hearing on the objections. Hanten requested a hearing on the objections which were filed in open court at the time originally scheduled for confirmation. The confirmation hearing was continued pending resolution of the objections. While it is true that the Court, at an 11 U.S.C. § 1324 confirmation hearing, has a duty, independent of the trustee, to make a rigorous examination of the debtor's plan and its compliance with the requirements of 11 U.S.C. § 1325, the confirmation hearing is the proper forum for such determination. Therefore, the issue of feasibility of the Debtors' plan is not properly before the Court as the record reflects such objection was not raised prior to submission to the Court of Hanten's memorandum of law and no evidence was presented on such issue at the hearing on objections.

The second issue raised in the Hanten memorandum, but not prior to that, challenges the eligibility of the Debtors to file for relief under Chapter 13. It is alleged that although debtor Michael McMonagle was employed at the time of filing the

Chapter 13 petition, because he was unemployed at the objections hearing, Michael McMonagle is not an individual with a regular income and the Debtors, therefore, are not eligible for Chapter 13 relief. This objection is not confined to determination of section 1325 requirements to be proven at a confirmation hearing, but is properly before the Court as a challenge to jurisdiction.

Based on the above, three issues are before the Court. The first issue is whether the Debtors are eligible for relief under Chapter 13. The second issue is whether a Chapter 13 plan is filed in good faith when the Debtors originally filed a Chapter 7 petition and converted to Chapter 13 after one judgment for nondischargeability of a debt was entered and two additional complaints alleging nondischargeability of debts were filed. The third issue is whether the issue of dischargeability of an unsecured creditor's claim in a Chapter 7 proceeding is relevant to the Court's determination of whether a Chapter 13 plan provides for payments of not less than would be paid on a creditor's claim if the Debtors' estate were liquidated in a Chapter 7.

Section 109(e) of The Bankruptcy Reform Act of 1978, the Bankruptcy Code, governs the eligibility of debtors to relief under Chapter 13. The pertinent part of section 109(e) provides:

[A]n individual with regular income and such individual's spouse, . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and non-contingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (1979).

■ By the plain language of the statute, Chapter 13 relief is not restricted exclusively to wage-earners. An "individual with regular income" is defined in 11 U.S.C. § 101(24) as:

[one] whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, . . .

Chapter 13 relief is available to any individual with stable and regular income whether it is social security recipients, self-employed people, pensioners, farmers, or professionals. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 118–19, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, at 6078–80.

■ This legislative intent has been followed by the courts. Disability benefits qualify as regular income. In re Dawson, 4 C.B.C.2d 1234, 13 B.R. 107 (Bkrtcy.M.D.Ala. 1981). Social security benefits also qualify. Matter of Moore, 17 B.R. 551 (Bkrtcy.M.D. Fla.1982); In re Devall, BLD ¶ 67875, 9 B.R. 41 (Bkrtcy.M.D.Ala.1980); In re Buren, 6 BCD 828, 2 C.B.C.2d 380, 4 B.R. 109 (Bkrtcy.M.D.Tenn.1980). A debtor whose only source of income is unemployment benefits is eligible for Chapter 13 relief. In re Overstreet, CCH ¶ 68,884, 23 B.R. 712 (Bkrtcy.W.D.La.1982). Aid to needy families or welfare benefits qualify a recipient for Chapter 13 relief. In re Shebel, 22 B.R. 9 (Bkrtcy.D.Vt.1982); In re Iacovoni, 5 BCD 1270, 2 B.R. 256 (Bkrtcy.D.Utah, C.D.1980). In the instant case, debtor Michael McMonagle was employed at the time of filing the joint Chapter 13 petition but was unemployed and receiving unemployment compensation at the time of the objection hearing. Debtor Suzanne McMonagle was employed part-time at the time of filing the joint Chapter 13 petition and was still employed at the time of the objection hearing. Therefore, applying the definition of an individual with regular income to the facts of this case, the Court finds that the Debtors qualify as individuals with regular income. Hanten did not present any evidence of the Debtors' current income and expenses to prove that the Debtors would not be able to make payments under Chapter 13. Without such evidence, it would be pure speculation to hold that the Debtors' regular income is not sufficient to make payments. There has been no proof that expenses exceed income. Until the Court has evidence otherwise, such as an amended plan or amended income figures, the Court concludes that the combined unemployment compensation and wages of the Debtors would enable

them to make payments under a Chapter 13 plan.

■ Whether the Debtors owed in excess of $100,000 in noncontingent, liquidated, unsecured debts at the time of filing the Chapter 13 petition is the second element of the eligibility requirement under 11 U.S.C. § 109(e) at issue here. All unsecured debts which are not unliquidated and not contingent are computed in determining eligibility. Disputed debts have no bearing on the computation. *In re DeBrunner,* 22 B.R. 36 (Bkrtcy.D.Neb.1982); *In re Sylvester,* 6 C.B. C.2d 586, 19 B.R. 671 (Bkrtcy.App.Cal.1982). Debtors produced evidence at the objection hearing that their total unsecured debt is approximately $38,000. (Exh. 4). Debtors excluded any debt which they disputed. Some of the disputed debts were supported by state court judgments taken by default against debtor Michael McMonagle. The fact that the Debtor now disputes personal liability for the debts has no bearing on the computation of the unsecured debt limits established by section 109(e). These debts are not contingent nor unliquidated. Therefore, the Court makes a determination pursuant to the evidence adduced at the objection hearing and judicial notice taken of the Debtors' Chapter 13 Statement, Question 11.b. The total amount of the priority unsecured creditor's claim is $550.00. The claims supported by state court judgments, including interest to the date of the Debtors' filing for relief, is approximately $41,018.00. The total of all other unsecured debts which are liquidated and noncontingent is approximately $17,570.00. Adding the amounts in the three categories comes to a grand total of $59,138.00. This does not include any unliquidated or contingent claims for which actions were pending in state court prior to the Debtors' filing for relief originally under Chapter 7. Nor does this computation include debts which are clearly those of the debtor Company which have been discharged in a separate Chapter 7 proceeding.

■ The Court is not persuaded by Hanten's argument that it is appropriate to pierce the corporate veil of the debtor Company and hold debtor Michael McMonagle personally liable. Hanten provides no authority for their statement that the Debtors' cross-referencing of the debtor Company's Chapter 7, A–3 Schedules with the Debtors' listing of unsecured debt was an admission of the Debtors' personal liability for the corporate debtor Company's debts. The Debtors clearly state on the schedules that personal liability for the corporate debt is disputed and the only reason for such incorporation by reference is that the petitioner is a stockholder, officer, and director of the debtor Company. Any further consideration of this argument is unnecessary as Hanten has no claim against the debtor Company and no standing to raise the issue. Hanten's claim was reduced to judgment in a state court action against the debtor Michael McMonagle and not the debtor Company. No creditor of the debtor Company has raised the issue of piercing the corporate veil before this Court.

The second issue before the Court concerns the question of good faith of the Debtors' filing for Chapter 13 relief when certain debts would be nondischargeable in a Chapter 7 proceeding. Chapter 13 allows a discharge from all debts provided for by the plan or disallowed under section 502 except alimony, child support, and certain long-term obligations. *See* 11 U.S.C. § 1328(a). In the instant case, the Chapter 13 discharge affects the Bank's nondischargeable judgment obtained prior to the Debtors' conversion to Chapter 13 from Chapter 7. This debt would not be discharged in a Chapter 7 bankruptcy but is dischargeable in a Chapter 13 proceeding. *See* 11 U.S.C. §§ 523(a)(4), 1328(a). Assuming *arguendo* that Hanten and G & H were successful in prosecuting their pending dischargeability complaints to judgments of nondischargeability, the same effect would apply.

In *In re Estus,* 695 F.2d 311 (8th Cir. 1982), the Eighth Circuit recently adopted the standard for the bankruptcy court to apply in determining whether a Chapter 13 plan has been proposed in good faith as

required by 11 U.S.C. § 1325(a)(3). The Court directed the bankruptcy court:

> [to] utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied.

*Id.* at 316.

The *Estus* case involved a Chapter 13 plan which proposed payment in full of the two secured debts and to pay nothing to the two unsecured creditors under a plan of fifteen months' duration. The Court rejected the requirement of a per se minimum repayment to unsecured creditors as an element of good faith. The percentage of repayment to unsecured creditors is but one factor the bankruptcy court weighs in making a determination of good faith. *Id.* at 317. Some of the other factors are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Id.*

The fact that debt which would be nondischargeable in a Chapter 7 is discharged in a Chapter 13 is but one factor to be weighed in making a determination of good faith. Section 1328 expressly allows discharge of debts which are not dischargeable in Chapter 7. 11 U.S.C. § 1328(a). Debtors cannot be penalized for utilizing the statutory provisions available. *See In re Blossfeld,* 8 BCD 44, BLD ¶ 68329, 13 B.R. 534 (N.D.Ill.1981). Congress provided a broader discharge under Chapter 13 than under Chapter 7 and it is not for this Court to deny any person eligible for Chapter 13 the right to that discharge. *See In re Hudson,* 9 B.R. 363, 365 (Bkrtcy.N.D.Ill., E.D. 1981); *see also In re Keckler,* 3 B.R. 155 (Bkrtcy.N.D.Ohio 1980). Therefore, this Court overrules the objection challenging the good faith of the Debtors' plan until such time that all factors bearing on good faith can be considered.

The third and final issue before the Court addresses the "best interests" test of confirmation of a Chapter 13 plan. Section 1325(a)(4) requires that the distribution on allowed unsecured claims under a proposed plan cannot be less than the amount that would be paid on such claims if the estate of the debtor were to be liquidated under a Chapter 7. 11 U.S.C. § 1325(a)(4). Hanten argues that the existence of nondischargeable debt under a Chapter 7 insures receipt of a greater distribution under a Chapter 7 liquidation than under a Chapter 13 where that same debt is discharged upon completion of the plan. By Hanten's reasoning, the best interests test of § 1325(a)(4) has not been satisfied.

The statute is clear that the test is "the amount that would be paid" if the estate were liquidated. *Matter of Koerperich,* 5 B.R. 752, 754 (Bkrtcy.D.Neb.1982). Liquidation of a Chapter 7 debtor's estate does not insure the payment in full of a nondis-

chargeable debt, but only that the debt survives discharge. There is no guarantee that the nondischargeable debt will ever be paid. The clear language of § 1325(a)(4) provides that the issue of dischargeability of unsecured creditors' claims in a Chapter 7 is not relevant to a determination of whether a debtor's Chapter 13 plan provides for payments of not less than would be paid on a claim if the debtor's estate were liquidated in Chapter 7. *In re Vratanina,* 22 B.R. 453 (Bkrtcy.N.D.Ill.1982); *In re Perez,* 20 B.R. 879 (Bkrtcy.D.N.Y.1982); *In re Slade,* 15 B.R. 910 (Bkrtcy.App.Cal.1981); *In re Syrus,* 12 B.R. 605 (Bkrtcy.D.Kan. 1981).

▆ The Debtors' Chapter 7 was a no-asset case where the unsecured creditors would receive nothing. The Debtors propose to pay $10,500.00 to the unsecured creditors under their proposed Chapter 13 plan. Therefore, the best interests test of § 1325(a)(4) is clearly met because the distribution on allowed claims under the plan is in excess of what would have been paid on such claims under a Chapter 7.

For the foregoing reasons, the objections of Hanten, G & H, and the Bank are overruled. This Memorandum Decision constitutes Findings of Fact and Conclusions of Law. Debtors' counsel shall provide an appropriate order within ten (10) days.

A confirmation hearing on the Debtors' plan should be conducted as expeditiously as possible and, in any event, within sixty (60) days of entry of the order.