**In re Gary W. PENDLETON and Nancy B. Pendleton, Debtors.**

**Bankruptcy No. 95–43358M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Sept. 29, 1998.

**426**

William L. Owens, Little Rock, AR, for Debtors.

David D. Coop, North Little Rock, AR, trustee.

## ORDER

JAMES G. MIXON, Chief Judge.

The issue before the Court is whether a sum of money that the debtors in this case have previously claimed as exempt is disposable income that should be used to fund the debtors' chapter 13 plan. After a hearing on the Debtors' motion for disbursement of exempt funds on June 19, 1998, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and the Court has jurisdiction to enter a final judgment.

On November 7, 1995, Gary W. Pendleton and Nancy B. Pendleton ("Debtors") filed a voluntary petition for relief under the provisions of chapter 13 of title 11 of the United States Code. Among the assets scheduled was a pre-petition personal injury claim. The Court approved the hiring of special counsel to pursue the claim. The Debtors estimated the amount of the personal injury claim in their schedules and claimed the amount as exempt pursuant to 11 U.S.C. § 522(d)(11)(D) and 522(d)(5).

On December 19, 1995, the Trustee objected to the claim of exemption as excessive but on February 21, 1996, withdrew the objection. The plan of reorganization was confirmed February 22, 1996, and the plan proposed to pay unsecured creditors pro rata "at least as much as they would receive under Chapter 7." The plan also provided that "a debtor must pay all disposable income into the plan for the benefit of unsecured creditors for no less than 36 months...."

By Order entered March 18, 1998, the Court approved a compromise settlement of the personal injury claim for $45,000.00. The Order also approved payment of special counsel's attorneys fee of $15,000.00 and costs of $141.00. The Trustee received the net proceeds of the settlement pending further orders of the Court.

On May 20, 1998, the Debtors filed a motion to compel the Chapter 13 Trustee to disburse to Debtors the net proceeds from the personal injury settlement because these sums were previously allowed as exempt property. The Trustee objected on the grounds that the settlement proceeds represented disposable income required by 11 U.S.C. § 1325(b)(2) to be committed to the plan for the benefit of unsecured creditors.

The parties stipulated that the Trustee has disbursed $10,613.52 of the settlement to the Debtors and holds $19,245.48, which is sufficient to pay fully all claims as filed and allowed pursuant to the terms of the confirmed plan.

## ARGUMENT

The Trustee argues that case law interpreting 11 U.S.C. § 1325(b)(2) uniformly

holds that exempt property in Chapter 13 is disposable income. The Debtors argue that exempt proceeds of the personal injury claim do not constitute disposable income and that the doctrine of res judicata, estoppel and law of the case preclude the Trustee from objecting to disbursement. In the alternative, the Debtors argued at the hearing that even if the money is disposable income it should still be disbursed to the Debtors because the Debtors have demonstrated that the money is reasonably necessary for their maintenance and support.

### DISCUSSION

■■ The Bankruptcy Code provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(A) & (B) (1994).

For purposes of section 1325(b), "disposable income" means income received by the debtor that is not reasonably necessary to be expended for the maintenance or support of the debtor or the debtor's dependents. 11 U.S.C. § 1225(b)(2)(A) (1994). See, also, 8 Collier on Bankruptcy ¶ 1325.08[1] (Lawrence P. King et al. eds., 15th ed. rev.1998).

Although some cases hold to the contrary, most courts conclude that exempt property is included in the definition of disposable income found in section 1325(b). *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir.1996) (income tax refund exempt under state law was disposable income); *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 797 (9th Cir. BAP 1995) (exempt disability payments were disposable income); *Wat-*

*ters v. McRoberts (In re Watters)*, 167 B.R. 146, 147 (S.D.Ill.1994) (exempt personal injury payment was disposable income). But see, *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1131 (4th Cir.1995) (An IRA fund to be distributed after the plan terminates is not disposable income); *In re Ferretti*, 203 B.R. 796, 800 (Bankr.S.D.Fla.1996) (exempt property can never be disposable income).

In a Chapter 12 case, the Court of Appeals for the Eighth Circuit has previously determined that property purchased with insurance proceeds exempt under state law cannot be included as disposable income for purposes of 11 U.S.C. § 1225(b)(2).[1] *Berger v. Pokela (In re Berger)*, 61 F.3d 624, 627 (8th Cir.1995). However, in a more recent decision the Eighth Circuit distinguished *In re Berger* on procedural grounds and ruled specifically that 11 U.S.C. § 1325(b)(2) requires that "exempt income not reasonably needed for support ... becomes 'disposable income' that must be paid to the creditors." *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir.1997).

■■ *In re Koch* is dispositive here. Its holding dictates that the exempt proceeds from the Debtors' personal injury settlement be characterized as disposable income pursuant to section 1325(B)(2). The fact that the Debtors previously claimed the proceeds as exempt does not invoke the restrictions of res judicata, estoppel or law of the case because the Debtors' confirmed plan provided for funding the plan with all disposable income, despite the exempt status of such income. Hence, paying some proceeds from the compromise settlement to unsecured creditors is consistent with the plan.

■■ The Debtors argue alternatively that the sum the Trustee holds should be paid to the Debtors because the sum is reasonably necessary for their maintenance and support. The Debtors' schedules reflect total monthly income of $1,819.72 and total monthly expenditures of $1,579.72. These schedules have not been amended and do not include funds from the compromise settlement as part of the Debtors' total monthly income.

1. The language of 11 U.S.C. § 1225(b)(2)(A) and     11 U.S.C. § 1325(b)(2)(A) is identical.

At the hearing on the Debtors' motion for disbursement of exempt funds, the Debtors introduced a doctor's statement in the sum of $11,455.37, which Mrs. Pendleton, one of the debtors, testified was not covered by insurance. She stated that an insurance company has paid some of her medical bills but she is unsure how much and that she was "getting duns from 'em." (Tr. at 23.). Mrs. Pendleton further testified about ongoing medical treatments, but was not specific as to the costs or the frequency of further treatment.[2] She indicated that she would have to quit one of her two jobs because of medical problems.

According to Mrs. Pendleton's testimony, her husband is disabled and terminally ill. She acknowledged that her husband draws $790.00 per month disability, which commenced after the petition was filed and is not included as monthly income on the Debtors' schedules. Mrs. Pendleton also testified that her husband needs $2,600.00 for dental work, that her vehicle is old and in need of replacement, and that she and her husband wish to make an $18,000.00 down-payment to purchase the home they now rent under a lease-purchase agreement.[3]

With a record this deficient it is impossible to ascertain if any of the money in the Trustee's possession is reasonably necessary for the support of the Debtors. Mrs. Pendleton's testimony as to the status of her medical condition, past reimbursement from health insurance, and the possibility of future insurance payments was too vague to justify a determination that the money is necessary to pay her medical expenses.

As the Trustee pointed out in his brief, the Debtors have already received a disbursement of $10,613.52, and they have available additional disposable unreported income of $790.00 per month. Based on the evidence presented, the Debtors have failed to establish that any portion of the $19,245.48 is reasonably necessary for the Debtors' support over and above the proceeds already

disbursed to the Debtors and the Debtors' monthly income.

The motion, therefore, is denied, and the Trustee is directed to apply the $19,245.48 in satisfaction of the confirmed plan.

IT IS SO ORDERED.

2. She stated, "Yeah, he told me I would need [treatments for pain] for the rest of my life. They're a thousand dollars. It depends on how many injections." However, the doctor's statement introduced as Debtor's Exhibit 1 does not reflect any charges of $1,000.00 for injections. (Tr. at 13–14.)

3. The record does not reflect that the Debtors will be forced to move from their current residence if they do not make the $18,000.00 down payment necessary to purchase the home.