**In the Matter of Randy Michael HUNTON, Sr., Brenda Hunton, Debtors.**

**No. 98–12687–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Oct. 11, 2000.

Steve L. Perkins, Berry & Wilson, Atlanta, GA, for Debtor.

M. Regina Thomas, Atlanta, GA, Chapter 13 Trustee.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court in the above-referenced case is the "Motion to Approve Settlement of Personal Injury Claim and Disbursement of Proceeds" (hereinafter "Motion") filed on June 23, 2000 by Randy and Brenda Hunton (hereinafter the "Debtors"). At a hearing on July 27, 2000, the Chapter 13 Trustee (hereinafter the "Trustee") interposed an objection to the Debtors' Motion. At the conclusion of the hearing, this case was taken under advisement. The parties have submitted letter briefs on the legal issue involved in this controversy. This matter falls within the Court's subject matter jurisdiction, see 28 U.S.C. § 157(b)(2)(A) & (O), and it shall be disposed of in accordance with the following reasoning.

### BACKGROUND

On August 27, 1998, the Debtors filed a Chapter 13 bankruptcy petition. Concurrent with the petition, the Debtors filed their schedule of assets. In Schedule B, the Debtors disclosed their interest in a personal injury claim against BellSouth. By order entered October 23, 1998, the Court approved the employment of Larry J. Polstra of the law firm of Hays & Maysilles to represent the Debtors in the personal injury action.

The Debtors' one percent Chapter 13 plan was confirmed on October 21, 1998. As part of an amendment to their sched-

ules and plan filed on May 25, 2000, the Debtors asserted a $25,730 exemption in the BellSouth claim. The file reflects that service of the amendment was made on all creditors and interested parties. No one objected to the Debtors' claimed exemption within the time period prescribed by Rule 4003(b) of the Federal Rules of Bankruptcy Procedure.

On a date not reflected in the record, the Debtors settled their claim against BellSouth for $31,500. After deducting attorney's fees and medical costs, $13,289.43 remains from the settlement proceeds for distribution to the Debtors and/or their creditors. By filing the instant Motion, the Debtors seek payment of the entire $13,289.43. The Debtors reason that they are entitled to the full amount of the net proceeds since the proceeds are exempt property. The Trustee, however, takes the position that a portion of the net proceeds should be deemed "disposable income" and turned over to her for the benefit of the Debtors' unsecured creditors. Unsecured creditors are owed approximately $3,300. Because there are sufficient funds available to satisfy the claims of unsecured creditors in full, the Trustee objected to the Debtors' Motion.

### DISCUSSION

Whether the exempt settlement proceeds constitute "disposable income" is the narrow issue before the Court. Two provisions of the Bankruptcy Code are pertinent to this discussion. First, § 1325(b) provides in pertinent part that

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

    \*     \*     \*     \*     \*     \*

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period

beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor....

11 U.S.C. § 1325(b). Second, pursuant to § 522(c), exempt property, with two exceptions not applicable here, is "not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case...." 11 U.S.C. § 522(c).

Section 1325(b) is an inclusive provision which requires a debtor, in the event of a confirmation objection, to make "all" of his or her disposable income available for distribution to creditors. Section 522(c), on the other hand, is an exclusive provision which operates to shield exempt property from pre-petition liability. Neither § 1325(b) nor § 522(c) is expressly limited by or subject to the other.[1] In a case like the one at bar, in which the Trustee seeks to satisfy pre-petition claims with proceeds generated through the liquidation of exempt property, it is difficult, if not impossible, to harmonize the two statutes. Notwithstanding that difficulty, most courts that have considered the issue have concluded that exempt property must be factored into § 1325(b)'s disposable income test. *See Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1289 (8th Cir.1997) ("Chapter 13 contains no language suggesting that exempt post-petition revenues are not disposable income"); *Freeman v. Schulman (In re Freeman),* 86 F.3d 478, 481 (6th Cir.1996) (tax refund, even though exempt under state law, qualifies as disposable income); *Watters v. McRoberts,* 167 B.R. 146, 147–48 (S.D.Ill.1994) (funds received

---

**1.** However, all of the provisions of Chapter 5 of the Bankruptcy Code, including § 522, apply to Chapter 13 cases. *See* 11 U.S.C. § 103(a).

from personal injury recovery constitute disposable income, even if funds are exempt under state law); *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 796–97 (9th Cir. BAP 1995) (social security income must be included in calculating disposable income even though it could be claimed as exempt); *In re Pendleton*, 225 B.R. 425, 427–28 (Bankr.E.D.Ark.1998) (exempt personal injury settlement proceeds constitute disposable income); *Gaertner v. Claude (In re Claude)*, 206 B.R. 374, 380 (Bankr. W.D.Pa.1997) (same); *In re Minor*, 177 B.R. 576, 580–81 (Bankr.E.D.Tenn.1995) (income from workers' compensation payments that was exempt under state law considered "disposable property" under § 1325(b)(2)); *but see In re Ferretti*, 203 B.R. 796, 800 (Bankr.S.D.Fla.1996) (exempt personal injury settlement proceeds should not be factored into the disposable income test); *In re Baker*, 194 B.R. 881, 884–85 (Bankr.S.D.Cal.1996) (exempt insurance proceeds were not part of debtor's projected disposable income because proceeds did not come in the form of a stream of payments); *In re Tomasso*, 98 B.R. 513, 515–16 (Bankr.S.D.Cal.1989) (exempt personal injury settlement proceeds do not constitute disposable income).

It is unnecessary for the Court to compare and contrast the reasoning articulated in the decisions cited above, as binding Eleventh Circuit authority controls the instant case. In *Gamble v. Brown (In re Gamble)*, 168 F.3d 442 (11th Cir.1999), the debtors sold real property during the pendency of their Chapter 13 case. 168 F.3d at 443. The debtors claimed an exemption in the net sales proceeds, to which no creditor or interested party objected. *Id.* After the bankruptcy judge entered an order requiring the debtors to turn the net proceeds over to the Chapter 13 trustee

pending completion of their plan, the debtors requested that the exempt proceeds be returned to them. *Id.* at 443–44. Relying on § 522(c), the bankruptcy judge denied the debtors' turnover motion, concluding that "[o]nce a debtor files a claim of exempt property and objections are not filed, or are resolved, exempt property is removed from the estate, eventually to be freed of creditors' claims. Until it is, however, it must be safeguarded and preserved in the event of a dismissal, in order to permit those claims to attach." *Matter of Gamble*, 208 B.R. 598, 602 (Bankr. S.D.Ga.1997). In rejecting the bankruptcy court's reasoning, the Eleventh Circuit stated that

> [n]either the trustee nor any creditor objected to the Gambles' exemption of the [real] property from the bankruptcy estate. Thus, the property became exempt. The plain language of the bankruptcy code and precedent from this court are clear that exempt property is no longer part of the bankruptcy estate, and is available for the debtor's use.

*Gamble*, 168 F.3d at 444–45 (citing *Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582, 584 (11th Cir.1985)).

While this Court recognizes that *Gamble* did not specifically address whether exempt property constitutes disposable income, the Eleventh Circuit stated in unequivocal terms that "[o]nce the property is removed from the estate [through exemption], the debtor may use it as his own." *Id.* at 444. The Court feels compelled to give *Gamble* a literal interpretation. To subject the Debtors' exempt settlement proceeds to the claims of creditors, by treating the proceeds as "disposable income," would conflict with this Court's reading of *Gamble*.[2] Accordingly,

2. The Trustee cites *Bibb County Department of Family & Children Services v. Hope (In re Hammonds)*, 729 F.2d 1391 (11th Cir.1984), for the proposition that public assistance benefits, though exemptible under Georgia law, constitute disposable income for purposes of § 1325(b). In *Hammonds*, the debtor sought to confirm a Chapter 13 plan, despite the fact that her sole source of monthly income was an AFDC check. 729 F.2d at 1392. The Bibb County Department of Family & Children Services (hereinafter "Bibb County") objected to the debtor's use of AFDC payments to fund a plan. *Id.* In support of its objection, Bibb

the settlement proceeds which the Debtors exempted during the course of this bankruptcy proceeding do not constitute "disposable income" under § 1325(b).

## Conclusion

Having given this matter its careful consideration, the Court concludes that the Debtors' Motion must be, and hereby is, **GRANTED**. Consequently, the Trustee's objection to the Debtors' Motion is **OVER-**

**RULED.** The Debtors are entitled to the balance of the settlement proceeds.

**IT IS SO ORDERED.**

County argued that AFDC payments were not estate property since they could be exempted under Georgia law. *Id.* at 1392–93. In response to Bibb County's argument, the Eleventh Circuit noted that exempt property must necessarily be property of the estate. *Id.* at 1393. Otherwise, if property subject to exemption was not considered estate property, there would be no need to exempt the property in the first place.

For our purposes here, the most instructive sentence in *Hammonds* is as follows: "Since the Bankruptcy Reform Act specifically allows the debtor to exempt local public assistance benefits from his or her estate, we must conclude that welfare benefits are included in the debtor's chapter 13 estate and are therefore subject to 11 U.S.C.A. § 1325(b)'s provision for income deductions." *Id.* The critical distinction between *Hammonds* and the instant case is that in *Hammonds*, the debtor made no attempt to exempt the public assistance benefits. Instead, the debtor in *Hammonds* sought to voluntarily submit her welfare benefits to the Chapter 13 trustee in an effort to satisfy the claims of creditors. As a result of this factual distinction, *Hammonds* does not cast doubt on the conclusion reached here today. The Eleventh Circuit simply ruled in *Hammonds* that public assistant benefits can be used to fund a Chapter 13 plan. Because the Eleventh Circuit did not rule that exempt public assistant benefits must be used to fund a plan, the Trustee's reliance on *Hammonds* is misplaced.